**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**KIMOY HODGE,**

> **Petitioner,**

**v.**                                    **Case No. 4:21cv108-MW/MAF**

**STATE OF FLORIDA,**

> **Respondent.**

_____/

## ORDER and
## AMENDED REPORT AND RECOMMENDATION

On February 22, 2021, Petitioner Kimoy Hodge, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  On August 9, 2021, Respondent filed a motion to dismiss the petition, with exhibits.  ECF No. 8.

On September 21, 2021, the undersigned entered a Report and Recommendation to dismiss the § 2254 petition as untimely.  ECF No. 9.  In that Report and Recommendation, the undersigned indicated Petitioner had not filed a reply, although he had been given the opportunity to do so.  *See id*. at 1, 5.

Petitioner has now filed a response to the motion to dismiss, ECF No. 10, referred to the undersigned by the district judge.  Although Petitioner did not date his response, in an abundance of caution, the undersigned vacates

the Report and Recommendation and enters this Amended Report and Recommendation, which takes into consideration Petitioner's response to the motion to dismiss.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter.  *See* Rule 8(a), R. Gov. § 2254 Cases.  The pleadings and attachments before the Court show the petition should be dismissed as untimely.  *See* Rule 4, R. Gov. § 2254 Cases (authorizing dismissal "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief" in federal court).

## **Procedural Background**

As set forth in the initial Report and Recommendation, Petitioner Kimoy Hodge challenges his conviction and sentence from the Second Judicial Circuit, Leon County, Florida, following his entry of negotiated plea to six counts in case number 2016-CF-1980.  ECF No. 1 at 1-2; ECF No. 8 at 2-3; Ex. A at 84-85 (Amended Information), 86-87 (Plea and Acknowledgement of Rights), 148-68 (plea and sentencing hearing); Ex. G at 4-14 (Judgment

and Sentence).[1]   On April 27, 2017, Judge Angela Dempsey sentenced Hodge, pursuant to the plea agreement, to five years in prison on each of the felony counts in case number 2016-CF-1980 as well as those in case number 2016-CF-1900, which involved additional offenses against the same victim from a separate incident involving the same victim.  Ex. A at 164-65.[1] All sentences were to run concurrent to one another in all cases.  Ex. A at 164-65; Ex. G at 4-14.   Hodge did not appeal.  *See* ECF No. 8 at 3. According to the Department of Corrections' website, his current release date is July 2, 2022.  *See* www.dc.state.fl.us/offenderSearch/detail.

On March 22, 2018, Hodge filed in the state trial court a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  Ex. A at 4-14.  He subsequently filed an amended motion.  *Id*. at 16-29.  The State filed a response.  *Id*. at 59-66.  The state postconviction court set an evidentiary hearing, which took place February 25, 2019.  *Id*. at 94-97.   At the hearing, the victim, Petitioner, and Petitioner's trial counsel testified.  Ex. A at 239-309.

---

[1] Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's motion to dismiss, ECF No. 8.

[1] Petitioner Hodge has a pending challenge to his conviction and sentence in case number 2016-CF-1900 in a § 2254 petition filed in case number 4:21cv107-WS/EMT.

At the conclusion of the evidentiary hearing, Judge Dempsey denied the Rule 3.850 motion, finding Hodge did not meet his burden to show ineffective assistance as "[t]here's been no prejudice shown and no deficient performance shown." *Id*. at 309.  The judge found Petitioner's trial counsel's testimony credible regarding Hodge "wanting to enter into a plea and not proceed to trial."  *Id*.  The judge further found that Hodge had not met his burden regarding alleged newly discovered evidence.  *Id*.  On February 27, 2019, the judge entered a written order consistent with the oral ruling.  *Id*. at 203-25.  In the written order, the judge also corrected Hodge's judgment and sentence to reflect that no probation was imposed on any of the third degree felonies:

> In reviewing the Judgments and Sentences and transcript in this case the Court realized that the Judgments and Sentences do not conform with the sentences announced on April 27, 2017. The Court did not impose probation on any of the third degree felonies (see attached).  An illegal sentence can be corrected at any time.  Therefore it is,
>
> **ORDERED AND ADJUDGED** the Clerk of Court shall prepare a corrected Judgment and Sentence in both cases that does not include probation on any of the third degree felonies.

*Id*.; *cf*. Ex. A at 164 (transcript of sentencing proceeding reflects the judge's oral pronouncement:  "And then finally in 16CF1980, I'm going to adjudicate you guilty, sentence you to five years on each of the felony counts, with credit

for 298 days that you've already served.  On the misdemeanor count, the sentence will just be the time served.  I'm going to impose the $971.25 fines and court costs, $100 cost of prosecution and $100 legal assistance lien.").

Hodge appealed and filed a pro se brief, and the First District Court of Appeal (First DCA) assigned the case number 1D19-1180.  Ex. B.  The State filed an answer brief.  Ex. C.  Hodge filed a pro se reply brief.  Ex. D.  On March 30, 2020, the First DCA affirmed the case without a written opinion.  Ex. E; Hodge v. State, 292 So. 3d 1154 (Fla. 1st DCA 2020) (table).  The mandate issued April 27, 2020.  Ex. E.

In early May 2020, Hodge filed in the state trial court a Motion for Reduction or Modification of Sentence, pursuant to Florida Rule of Criminal Procedure 3.800(c).  Ex. F.  By order on May 7, 2020, the state court, Judge Lee Marsh, dismissed the motion as untimely.  Ex. G.  Hodge did not appeal.

As indicated above, on February 22, 2021, Hodge filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court.  ECF No. 1.  Respondent filed a motion to dismiss the petition, with exhibits.  ECF No. 8.  Petitioner has filed a response to the motion to dismiss.  ECF No. 10.

Accordingly, it is **ORDERED** that the Report and Recommendation entered September 21, 2021, ECF No. 9, is **VACATED**.  The undersigned

has considered Petitioner's response to the motion to dismiss in entering this Amended Report and Recommendation.

## Analysis

Under the AEDPA, there is a one-year limitations period for filing a § 2254 petition.  28 U.S.C. § 2244(d)(1).  The period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  *Id.* § 2244(d)(1)(A). Later dates which may commence the period are the date on which an unconstitutional impediment that prevented the applicant from filing is removed; the date on which the constitutional right asserted was recognized by the U.S. Supreme Court and made retroactive on collateral review; and the date on which the factual predicate for the claim could have been discovered with due diligence.  *Id.* § 2244(d)(1)(B)-(D).  The limitations period is tolled for the time during which a "properly filed" application for relief is pending in state court.  *Id.* § 2244(d)(2).  The time may be equitably tolled, but "only if a petitioner establishes *both* extraordinary circumstances and due diligence."  <u>Diaz v. Sec'y for Dep't of Corr.</u>, 362 F.3d 698, 702 (11th Cir. 2004).

In this case, as indicated above, Hodge did not appeal his judgment and sentence, which was entered April 27, 2017.  If a prisoner does not appeal the state court judgment, his conviction becomes final when the time for filing a direct appeal expires.  *See* Fla. R. App. P. 9.140(3).  Thus, Hodge's conviction became final for federal habeas purposes on Tuesday, May 30, 2017, upon expiration of the thirty-day period in which to file an appeal.  Absent any tolling activity, he had one year thereafter, or until May 30, 2018, to file his federal habeas petition. *See, e.g.*, Cadet v. Fla. Dep't of Corr., 853 F.3d 1216, 1218 (11th Cir. 2017) (explaining Cadet's conviction became final "on December 23, 2002, when the time for seeking a writ of certiorari from the United States Supreme Court expired" and "[o]n that same date, Cadet's one-year statute of limitations for filing a federal habeas petition began to run," citing 28 U.S.C. § 2244(d)(1)(A)); Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (calculating limitations period according to "anniversary method"); Ferreira v. Sec'y, Dep't of Corr., 494 F.3d 1286, 1289 n.1 (11th Cir. 2007) (applying anniversary date analysis).

As indicated above, on March 22, 2018, Hodge filed a Rule 3.850 motion in state court.  Ex. A at 4-14.  This filing stopped the AEDPA clock at 296 days and the time remained tolled through April 27, 2020, when the First

DCA issued the mandate in the appeal affirming the denial of postconviction relief.   The AEDPA clock started again on April 28 and expired after the remaining 69 days ran untolled, on Monday, July 6, 2020.

As Respondent asserts, to the extent Hodge may argue that his Rule 3.800(c) motion filed in the state court on May 6, 2020, stopped the AEDPA clock, such argument should be rejected.   This motion was not "properly filed," to qualify for AEDPA tolling, because it was untimely.   Ex. H.   *See* Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) ("Time limits, no matter their form, are 'filing conditions,' and . . . a state postconviction petition is therefore not 'properly filed' if it was rejected by the state court as untimely."); Jones v. Sec'y, Fla. Dep't of Corr., 906 F.3d 1339, 1350 (11th Cir. 2018) (explaining state court found Rule 3.850 motion untimely and "we are required to defer to that ruling" and "[t]hat necessarily means that the motion wasn't 'properly filed,' and thus it didn't toll AEDPA's one-year statute of limitations").

Even assuming the filing of the Rule 3.800(c) motion did stop the clock, however, Hodge's habeas petition is still untimely.   Giving Hodge the benefit of any doubt, he filed his Rule 3.800(c) motion on May 1, 2020, and the state court denied it on May 7, 2020.   Hodge did not appeal the denial but even allowing the 30-day appeal period to toll the AEDPA clock, his time restarted

on Monday, June 8, 2020, and less the 4 days that had run from April 28 through May 1, he had 65 days left in the limitations period. Under this view, the AEDPA clock then ran untolled for those 65 days and expired August 11, 2020.

To the extent Hodge may argue that his one-year AEDPA clock completely restarted pursuant to the state trial court's order on February 27, 2019, directing correction of the judgment to reflect no probation on the third degree felonies, such argument should also be rejected. *Cf.* <u>Magwood v. Patterson</u>, 561 U.S. 320 (2010); <u>Murphy v. U.S.</u>, 634 F.3d 1303 (11th Cir. 2011). Hodge was not re-sentenced and the correction merely conformed the written judgment to the oral pronouncement made at the sentencing hearing. *See* Ex. A at 64; Ex. G at 4-14. This is not equivalent to a "new judgment" that would trigger a new AEDPA limitations period. *See* <u>Thompson v. Fla. Dep't of Corr.</u>, 606 F. App'x 495, n. 8 (11th Cir. 2015) ("[N]ot all post-judgment changes or corrections to a sentence result in a new 'judgment' for purposes of § 2244(d)(1)a."); <u>Mathews v. Sec'y, Dep't of Corr.</u>, 2009 WL 5128027, at *1 (M.D. Fla. Dec. 21, 2009) ("Petitioner . . . was not resentenced. The change in the written sentence was merely clerical. It only corrected what was essentially a scrivener's error. . . . Therefore, the 2007

'Corrected Sentence,' which did nothing more than correct a clerical or scrivener's error, did not restart AEDPA's one-year limitation period."). Hodge is in custody on the judgment that became final May 30, 2017.  His § 2254 petition, filed February 22, 2021, is untimely.

Hodge appears to recognize his § 2254 petition is untimely.  *See* ECF No. 1 at 13; ECF No. 1-1 (Hodge's cover letter accompanying his § 2254 petition).  He asserts, in response to the "Timeliness of Petition" inquiry, that "the ignoring of Claim One of this here petition would continue further into a miscarriage of justice due to the Petitioner being actually innocent of crime(s) supported with merited facts."  ECF No. 1 at 13.  In "Claim One," Hodge asserts "[a] fundamental miscarriage of justice for Petitioner is actually innocent of crime(s)/conviction (5th & 14th Amendment Violations)."  *Id*. at 5. He explains:

> At the Feb. 25, 2019 evidentiary hearing held on the Petitioner's Rule 3.850 motion clarified and new facts testified to by the victim proves Petitioner's innocence by facts and legal definition of crimes (as Fl. Statute states).  Victim tells Petitioner was actually trying to kill himself and she was trying to stop him; didn't commit "Grand Theft," "Aggravated Assault . . .," "Resisting Arrest . . ." by statutory definition, etc.

*Id*.  In his supporting memorandum, Hodge asserts he "experiences a fundamental miscarriage of justice due to him being actually innocent of his

conviction (under a nolo contendere plea) and/or crimes, which based on clarified facts/ details that proves both factually and legally that he is innocent of the alleged crimes." *Id*. at 16.

In his response to the motion to dismiss, Hodge also does not specifically address the timeliness issue.   ECF No. 10.   He asserts Respondent has misstated the facts and this "establish[es] grounds for the granting of this motion." *Id*. at 3.  He also asserts the victim recanted and/or clarified her statements to law enforcement, and this is "newly discovered evidence." *Id*. at 3-8.  Hodge concludes:

> Meeting the "Newly Discovered Evidence" requirement under Schlup now that the Respondent's false statement of the State Court finding that the victim's testimony at the (Feb. 25, 2019) Evidentiary Hearing is proven with the State Court's actual wording, there in fact exist a "colorable" claim of "Actual Innocence" for the Petition to be entertained by this Honorable Court by over stepping the procedural bar.  Again do note that the Respondent has filed a motion, their "Motion to Dismiss," with false statements as well as misrepresented facts.  Accordingly, the Respondent's "Motion to Dismiss" should not be granted and the Petitioner's Petition for Habeas Corpus continue in this Court.

*Id*. at 8.

To the extent this is an argument by Hodge that his incarceration constitutes a "fundamental miscarriage of justice" because he is "actually innocent," such that he should benefit from the equitable exception to the

AEDPA statute of limitations set forth in <u>McQuiggin v. Perkins</u>, 569 U.S. 383 (2013), this argument should be rejected.  In <u>McQuiggin</u>, the U.S. Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" even when the AEDPA time has expired.  569 U.S. at 386.  The Court cautioned, however, that "tenable actual-innocence gateway pleas are rare:   '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  *Id*. (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 329 (1995)); see <u>Gore v. Crews</u>, 720 F.3d 811, 817 (11th Cir. 2013) (explaining U.S. Supreme Court "has not recognized any equitable exceptions to the statutory bars on habeas petitions when the petitioner does not make a 'credible showing' of actual innocence" and the Court's "most recent decision on the matter, McQuiggin, reaffirmed that principle, holding that there is an 'equitable exception' to the statute of limitations applicable to habeas claims, 28 U.S.C. § 2244(d), but only when the petitioner presents new evidence that 'shows it is more likely than not that no reasonable juror would have convicted the petitioner'").  "To be credible, such a claim requires a petitioner to support his allegations of constitutional error with new reliable evidence –

whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup, 513 U.S. at 324; *see* McQuiggin, 569 U.S. at 401 ("We stress once again that the Schlup standard is demanding.  The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" (quoting Schlup, 513 U.S. at 316)).

Here, Hodge has not supported his claim that he is "actually innocent" with any new reliable evidence as required.  *See* ECF No. 1 at 5, 16-19.  He appears to assert the same "newly discovered evidence" claim presented to the state post-conviction trial court.   The state post-conviction trial court rejected this claim, finding Hodge had not met his burden.  Ex. A at 309.  On appeal, the First DCA affirmed the order without a written opinion.  Ex. E. The First DCA's summary affirmance is an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d).  *See* Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim

on the merits in the absence of any indication or state-law procedural principles to the contrary.").

A review of the record supports the state courts' determination.  Ex. A at 239-309.  In particular, the victim testified, regarding case number 2016-CF-1980, that her judgment was not the best at the time of the events giving rise to the charges in that case as she had "enjoyed some drinks," and she did not "exactly remember" what the officers had asked her.  *Id*. at 252.  She testified that she knew she and Hodge had gotten "into an altercation" and "in the end it resulted in [him] trying to harm [himself] and not necessarily [her]."  *Id*.  She testified, "There was a lot just going on at the time."  *Id*.  She testified that she did not think she "probably gave the best description" to the officers.  *Id*.  She further testified:

> [Hodge] did unfortunately grab a knife from my kitchen.  But the whole time that he did have the knife, he never like pointed it at me, he had it like at himself.  Like at his neck.  So, he was just trying to harm himself being – because of the arguments we were having.  But it wasn't anything going towards harming me.

*Id*. at 253.  She testified that she did not feel threatened by Hodge.  *Id*.  She testified that she was in a relationship with Hodge and "we had our good and bad times" and "you know, you say things when you're angry that you don't specifically mean."  *Id*. at 254.  On cross, she testified she cared about

Hodge, did not want anything bad to happen to him, and did not want him to go to prison. *Id*. at 256. She testified that she had written a statement in 2018, after Hodge's conviction, "to try to help him reduce the sentence, that this the least I could do to clarify the things that happened." *Id*. at 258. She testified, "Honestly, there were a lot of things like I honestly – this is just regarding everything – I just don't feel that he deserved that much of a sentence for something that was, I guess small, that blew up into things that were way bigger." *Id*.

Hodge's attorney, an assistant public defender, also testified at the hearing. She testified that, in case number 2016-CF-1980, Hodge had been charged with kidnapping to inflict bodily harm or terrorize, a first degree felony punishable by life; domestic battery by strangulation, a third degree felony; grand theft; and felony battery. *Id*. at 266-67. The last three charges were third degree felonies. *Id*. at 267. She had in her notes that Hodge "indicates that he would be willing to resolve all three cases with five years incarceration followed by five years of probation." *Id*. at 269-70. She also had a note that Hodge did not want to go to trial in case number 2016-CF-1980. *Id*. at 270. She testified that she reviewed the police reports and the 911 calls in the case and recalled that "the 911 calls were made by various

people that lived at the apartment complex," multiple independent eyewitnesses unrelated to the victim.  *Id*. at 271; *see id*. at 288-89.

Thus, the record supports the state court's determination that Hodge did not meet his burden to show newly discovered evidence.  The victim's statements to law enforcement investigating the case differed from those she presented after Hodge entered his plea and was sentenced.  *Compare* Ex. A at 67-75 *with* Ex. A at 99, 252-58.  The state post-conviction court properly evaluated her credibility.  *See, e.g.*, Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review.").  *See also* Wilson v. Sellers, -- U.S. --, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").  *See also, e.g.,* Green v. State, 975 So. 2d 1090, 1100-01 (Fla. 2008) (affirming denial of new evidence claim and explaining witness's "out of court recantation would not likely produce an acquittal on retrial because it would only serve as impeachment to his original testimony" and, further, appellate court "generally defer[s] to the trial

judge regarding these credibility determinations); <u>Bell v. State</u>, 90 So. 2d 704, 705 ("[R]ecanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true.  Especially is this true where the recantation involves a confession of perjury." (quoting <u>Henderson v. State</u>, 185 So. 625, 630 (Fla. 1938))).  The state courts' rulings are entitled to deference.

Moreover, Hodge entered a negotiated nolo contendere plea in this case, resolving several pending charges in multiple cases.  Ex. A at 86-87. The signed Plea and Acknowledgement of Rights form includes the statement that "a plea of no contest means that [Hodge] will not contest the evidence against [him]."  *Id*. at 86.  It also includes the statement that his plea "means there will be no trial, and no further investigation, discovery, or pretrial motions."  *Id*.  It includes the following paragraphs:

> (3)  I understand the nature of the charges to which I am pleading and I am aware of the maximum and minimum penalties.  My lawyer has informed me of the facts the State would have to prove before I could be found guilty, and discussed with me any possible defenses that could be raised in my case. There are no alibi or defense witnesses my lawyer has refused to investigate.  I am satisfied with my lawyer's advice and help.  I understand that a plea to a felony may cause me to lose certain rights, including the right to vote & possess firearms.

> (4)  If the judge accepts this plea, I give up the right to a trial, the right to require the State to prove the charge(s) against

> me beyond a reasonable doubt, the right to have a jury decide whether I am guilty or not guilty, the right to see and hear the witnesses against me and to have my lawyer question them, the right to subpoena and present witnesses or other evidence or any defenses I may have, and to testify or remain silent as I choose.

*Id*. By signing the form, Hodge also agreed, "I am entering this plea because I acknowledge my guilt or I believe it is in my best interest to do so." *Id*. at 87. Indeed, in his response to the motion to dismiss, Hodge acknowledges that he entered the plea "because he felt it was in his best interest, meaning because the plea offered was convenient." ECF No. 10 at 2.

For federal habeas purposes, a nolo contendere plea is treated the same as a guilty plea. *See* North Carolina v. Alford, 400 U.S. 25, 35-37 (1970); *see also, e.g.*, Florida v. Royer, 460 U.S. 491, 495 n.5 (1983) (noting that, under Florida law, "a plea of nolo contendere is equivalent to a plea of guilty"). "If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases.'" Tollett v. Henderson, 411 U.S. 258, 266 (1973) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)); *see, e.g.*, Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992) ("A knowing and voluntary guilty plea waives all constitutional challenges to a conviction."). A defendant who enters a plea may not raise claims relating

to alleged deprivations of constitutional rights that occurred prior to entry of the plea, but rather such a defendant may only attack the voluntariness of the plea by showing counsel's advice fell below the McMann standard:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standard set forth in McMann.

Tollett, 411 U.S. at 267. The U.S. Supreme Court has further explained:

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

United States v. Broce, 488 U.S. 563, 569 (1989); *see* Mabry v. Johnson, 467 U.S. 504, 508 (1984) ("It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."); Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("[T]he representations of the defendant, his

lawyer, and the prosecutor at [the plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Because Hodge has not supported his claim that he is "actually innocent" with any new reliable evidence as required, he has not opened the "gateway" described in <u>McQuiggin</u> and other cases, such that his § 2254 claims may be considered on the merits.  His § 2254 petition should be dismissed as untimely.

## <u>Conclusion</u>

This § 2254 petition is untimely.  Therefore, it is respectfully **RECOMMENDED** that Respondent's motion to dismiss, ECF No. 8, be **GRANTED**, and the § 2254 petition challenging Hodge's conviction in state court case number 2016-CF-1980, ECF No. 1, be **DISMISSED as untimely**.

## <u>Certificate of Appealability</u>

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the

applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by filing objections to this Amended Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## **Recommendation**

It is therefore respectfully **RECOMMENDED** that Respondent's motion to dismiss (ECF No. 8) be **GRANTED** and the § 2254 petition (ECF No. 1)

be **DISMISSED as untimely.**  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on September 28, 2021.

S/  Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**